UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Joshua Frederick Davis,      ) | |
| )                            | |
| Petitioner,  ) | |
| vs.                          ) | Criminal No. 2:16-0381-RMG |
| )                            | |
| United States of America,    ) | |
| )                            | |
| Respondent.  ) | **ORDER** |
| _____) | |

This matter comes before the Court on Joshua Davis's *pro se* petition to vacate his sentence under 28 U.S.C. § 2255. Petitioner has submitted multiple filings in support of his petition totaling more than 500 pages, much of it handwritten. (Dkt. Nos. 220, 220-1, 220-2, 220-3, 235-2, 257). The Government has submitted a memorandum in opposition. (Dkt. No. 248-1). The Government, at the Court's direction, filed additional documents and affidavits relating to Petitioner's rejection of one of his plea offers. (Dkt. No. 270, 270-1, 270-2, 270-3, 270-4, 270-5, and 270-6).[1]

**Factual Background**

Petitioner was indicted on April 10, 2016 on four counts: Possession with Intent to Distribute Methamphetamine, Cocaine Base (crack cocaine) and Cocaine on December 28, 2015 and February 8, 2016 (Counts 1 and 4); Felon in Possession (Count 2); and Use of a Firearm during and in relation to a Drug Trafficking Crime (Count 3). (Dkt. No. 1). Petitioner moved to suppress from evidence drugs discovered as a result of traffic stops on December 28, 2015 and

---

[1] Petitioner filed motions to compel the Government and his defense counsel, Ms. Williams, to produce all emails regarding plea negotiations. (Dkt. Nos. 264, 269). The Government filed all emails with the Court. (Dkt. No. 270). Consequently, the Court **denies as moot** Petitioner's motions to compel. (Dkt. Nos. 264, 269).

1

February 7, 2017, and drugs and a gun discovered at Defendant's residence on December 28, 2016 following the issuance of a search warrant obtained after the traffic stop.

Petitioner's court appointed trial counsel, Ms. Susan Williams, vigorously pursued the suppression motion. She sought and obtained Court approval of an expert to challenge an alert by a police dog that was part of the December 28, 2015 traffic stop. Ms. Williams obtained and reviewed the training records of the police dog involved in the December 28, 2015 traffic stop. She then ably participated in a two-day evidentiary hearing on the suppression motion. In the course of the evidentiary hearing, Ms. Williams cross examined the various law enforcement officers involved in the two challenged traffic stops and the issuance of the search warrant of Petitioner's home. She offered an expert witness challenging whether the police dog actually alerted to the presence of drugs in Petitioner's vehicle and cross-examined the Government's police dog expert. Ms. Williams and the Government prosecutor skillfully presented their evidence and legal arguments in support of and in opposition to the Petitioner's suppression motion.

The Court issued a 21-page order on June 19, 2017 that exhaustively addressed the numerous factual and legal issues raised by Petitioner in his motion to suppress and evidentiary hearing. The Court denied all aspects of Petitioner's motion to suppress. (Dkt. No. 149). The Fourth Circuit subsequently affirmed the Court's rulings on the suppression motion. *United States v. Davis*, 760 Fed. Appx. 220 (2019), *cert denied* 140 S. Ct. 272 (2019).

Petitioner appeared before the Court on June 29, 2017 to enter a guilty plea pursuant to a plea agreement mutually agreed to by the Petitioner and the Government. Petitioner agreed to plead guilty to three of the four counts in the indictment, with the Government's agreement to dismiss the 18 U.S.C. § 924(c) count and to preserve the Defendant's right to seek appellate

review of the Court's ruling on the motion to suppress. (Dkt. No. 151). In the course of the plea colloquy with the Court prior to the acceptance of the guilty plea, Petitioner stated he was satisfied with Ms. Williams's representation, that she had done everything he asked her to do, and that there was nothing further he wanted her to do before the Court proceeded with his guilty plea. (Dkt. No. 180 at 6). Petitioner readily acknowledge his guilt regarding the possession of drugs, explaining that "the purpose of the suppression hearing was not to contest whether I have the drugs, just whether my rights were violated in the process." (*Id*. at 21). After discussing with Petitioner the elements of each of the counts to which he was pleading, the Court asked Petitioner: "And what you're telling me is that you acknowledge as to count one, count two, and count four, you're guilty as charged, is that correct, sir?" Petitioner responded, "Yes sir." (*Id*. at 26).

A Pre-Sentence Report was prepared in advance of Petitioner's sentencing. His Total Offense Level was 35 and Criminal History was VI, with a Guideline Range of 292-365 months. Petitioner's prior convictions, including multiple convictions for possession with the intent to distribute illegal substances, resulted in his designation as both a Career Offender and an Armed Career Criminal. (Dkt. No. 169 at 10-12). The Court sentenced Petitioner at the bottom of the Guidelines range, to 292 months. (Dkt. No. 171). Petitioner's sentence was later affirmed by the Fourth Circuit. *United States v. Davis*, 760 Fed. Appx. 220 (2019).

## Legal Standard

A petitioner seeking § 2255 relief for alleged ineffective assistance of counsel bears the burden to show (1) that his trial or appellate counsel's performance fell below an objective standard of reasonableness; and (2) that a reasonable probability exists that but for counsel's ineffective assistance, the result of the proceeding would have been different. *Strickland v.*

*Washington*, 466 U.S. 668, 694 (1984). The Court must apply a "strong presumption" that counsel's performance fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

Courts are reluctant to characterize tactical or strategic decisions by counsel as ineffective assistance. *Carter v. Lee*, 283 F. 3d 240, 249 (4th Cir. 2002). A "strong presumption" exists that counsel's actions were the function of trial tactics and not "sheer neglect." *Harrington*, 562 U.S. at 109. Further, a failure of counsel to raise every conceivable claim or argument is not a basis to find ineffective assistance. *Engle v. Isaac*, 456 U.S. 107, 134 (1982). Indeed, it is well recognized that "experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments . . ." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Additionally, under *Strickland*, the petitioner must show prejudice, that it is reasonably likely the result would have been different but for counsel's errors and that the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104. Where a petitioner claims that he lost a plea offer due to ineffective assistance of counsel, he must show by a preponderance of the evidence that, but for his counsel's ineffective assistance, he would have accepted the offer. *Missouri v. Frye,* 556 U.S. 134, 150 (2012).

**Discussion**

Petitioner asserts nine grounds for his habeas petition, which the Court addresses below:

A.     <u>Ineffective Assistance of Trial Counsel (Ground Two)</u>:

Petitioner claims that his trial counsel, Ms. Williams, failed to explain to him some of the elements of the charges against him, gave him bad legal advice, and was under personal financial

4

pressures, "which could be the cause for some of the mistakes she made." (Dkt. No. 220 at 10-11). The record before the Court and the Court's personal observations of the performance of Ms. Williams on behalf of Petitioner do not support a claim of ineffective assistance of counsel. To the contrary, Ms. Williams was extremely diligent in her pursuit of Petitioner's suppression claims, which included gathering voluminous records relating to the challenged searches, retaining an expert from California to appear and testify, and ably conducting an evidentiary hearing on the motion to suppress that extended over two days. Ms. Williams's efforts on Petitioner's behalf were well within the objective range of competent representation and exceeded that standard.

In regard to the claim that Petitioner did not have an understanding of the charges against him, during the plea colloquy, the Court carefully explained each element of each charge pending against him. (Dkt. No. 180 at 9-11). Petitioner confirmed his understanding of the charges against him, and the Court then stated: "I do find the defendant comprehends and understands the nature of the charges against him, and generally what elements the Government would have to prove if a trial were held." (*Id*. at 11). Petitioner further confirmed to the Court that he was fully satisfied with the performance of his attorney and there was nothing else he wanted her to do before proceeding with his guilty plea. (*Id.* at 6).

Petitioner asserts that he turned down one of the Government's plea offers, which would have allowed him to plead to a single count (Count Four), which involved possession with the intent to distribute methamphetamine. Petitioner asserts that he rejected this plea offer because Ms. Williams told him that the Government was required to produce the drugs and guns at a May 25, 2017 suppression hearing to establish chain of custody and that the failure to produce the drugs and guns would result in the evidence being suppressed. (Dkt. Nos. 220 at 10; 220-3 at

122; 257 at 10-11).  Petitioner asserts Ms. Williams was in error and the evidence was not suppressed even though the guns and drugs were not produced at the May 25, 2017 suppression hearing.  Petitioner argues that Ms. Williams's performance constituted ineffective assistance of counsel because he allegedly lost an attractive plea offer in reliance on Ms. Williams's advice and subsequently had to plead to a less favorable plea offer.

     A review of the voluminous record before the Court reveals no error whatsoever on Ms. Williams's part.  Ms. Williams filed an initial motion to suppress on December 5, 2016 and an evidentiary hearing was set on that motion for May 25, 2017.  (Dkt. No. 43).  On May 8, 2017, Ms. Williams filed a supplemental motion to suppress that raised for the first time the chain of custody issue. (Dkt. No. 111).  The Court entered an Order on May 17, 2017 directing the Government to file a response to the supplemental motion to suppress by June 9, 2017 and advising the parties that the chain of custody issue would be addressed in a later hearing after the parties had fully briefed the issue. (Dkt. No. 127).  Addressing the chain of custody issue was delayed to allow the parties a full opportunity to brief the issue.  The May 25, 2017 hearing dealt with a broad range of other suppression issues.

     The record contains extensive communications between the Government prosecutor and Ms. Williams over the offer to plead guilty to Count Four.[2]  The offer was extended by the Government on May 15, 2017 and provided for a possible sentencing range of 5-40 years, the statutory range for the charged drug offense.  (Dkt. No. 270-4 at 45-46).  Ms. Williams

---

[2] In its initial response to Defendant's motion to vacate his sentence, the Government inaccurately denied it had ever offered a plea to a single count. (Dkt. No. 248-1 at 7).  The Court directed the Government to produce all communications regarding its plea negotiations with Ms. Williams and directed Ms. Williams to file an affidavit detailing her recollections of the plea discussions.  (Dkt. No. 258). Ms. Williams produced documents plainly showing that Defendant had received a single count plea offer and rejected it.  The Government prosecutor acknowledged his oversight and confirmed Defendant did receive a plea offer to plead to Count Four of the Indictment.

responded that Petitioner would not accept such a broad sentencing range, but would likely accept a plea to anything less than 10 years. (*Id*. at 54).  The prosecutor responded that Petitioner's criminal history would make a sentence in that range not acceptable to the Government. (*Id*.).   The Government set a deadline for acceptance of the offer on May 19, 2017.

Ms. Williams met with Petitioner at the detention center on May 17, 2017 and he was made aware of the Court's order delaying the chain of custody issue to a later date beyond the already scheduled May 25, 2017 suppression hearing.  Ms. Williams recommended Petitioner take the Government's plea offer, but Petitioner insisted on a definite number for his sentence. (Dkt. No. 270-2 at 12).  Ms. Williams subsequently advised the prosecutor that Petitioner "won't plead unless we have an absolute certain number decided."  (Dkt. No. 270-5 at 14, 18).

The Court conducted two days of hearings on Petitioner's original motion to suppress on May 25 and 31, 2017.  On June 19, 2017, the Court denied the Defendant's original motion to suppress.  (Dkt. No. 149).   Petitioner appeared before the Court on June 29, 2017 to plead guilty pursuant to a conditional plea agreement, which preserved his right to file an appeal regarding the Court's order denying suppression.  As previously mentioned, Petitioner told the Court under oath that he was satisfied with Ms. Williams's representation and there was nothing else he wanted her to do before he entered his plea.  (Dkt. No. 180 at 6).

In sum, the chain of custody issue was not addressed at the May 25, 2017 hearing because the Court carried over the issue to a later date to allow the parties to fully brief the issue. Petitioner elected to plead guilty before the Court had the opportunity to address the chain of custody issues, but that was his choice when he elected to enter a guilty plea on June 29, 2017. There is no evidence in this record to support the claim that Ms. Williams was in any way ineffective regarding the chain of custody issue.

7

In addition to failing to show any act or omission of Ms. Williams that constituted ineffective assistance of counsel, Petitioner has not carried his burden of showing any prejudice flowing from her alleged ineffective assistance. Petitioner was caught twice with significant amounts of drugs in his personal vehicle in traffic stops that occurred six weeks apart and still more drugs and a gun were located in his residence after the first traffic stop. Both traffic stops and the subsequent searches were handled by competent law enforcement officers who met constitutional requirements in conducting the searches. In short, Petitioner's prejudice comes not from the work of his diligent trial attorney, but from his persistent engagement in drug distribution after multiple arrests, convictions, and periods of incarceration. Petitioner has only himself to blame for his convictions and significant period of incarceration. Further, the documented record of plea negotiations shows that Petitioner rejected the single count plea offer because he was unwilling to plead to a sentence that covered the full statutory range of 5-40 years. The Court finds that Petitioner has failed to carry his burden of demonstrating ineffective assistance or prejudice regarding the representation of trial counsel. (Ground Two).

B.   <u>Ineffective Assistance of Appellate Counsel (Ground One)</u>:

It is well settled that appellate counsel has no obligation to raise every conceivable issue and that the selection of which issues to raise on appeal is a matter of judgment that must be exercised by appellate counsel. *Jones*, 463 U.S. at 751-52. Petitioner's court appointed appellate counsel, Mr. Michael Hanzel, filed a thoroughly researched and well organized 60-page opening brief and 18-page reply brief. His appeal focused on the traffic stop of December 28, 2015, raising challenges to the initial traffic stop, the *Terry* frisk, the delay while the original officer waited for back-up, the free air sniff of the police dog, and the second search of Defendant. (Fourth Cir. App. No. 18-4042, Dkt. Nos. 25, 47). Following the entry of a *per*

*curiam* order affirming the district court's decision, Mr. Hanzel, on behalf of Petitioner, unsuccessfully sought *certiorari* review to the United States Supreme Court. (Dkt. Nos. 74, 75).

    Petitioner asserts that Mr. Hanzel was ineffective because he "failed to properly argue the dog alert issue" and failed to raise a variety of legal issues that Petitioner believes appellate counsel should have raised. Petitioner also complains that appellate counsel failed to raise various claims of ineffective assistance of counsel regarding Ms. Williams's alleged deficiencies at the trial level. (Dkt. No. 220 at 2-10). A review of appellate counsel's brief raises numerous issues focused on the traffic stop of December 28, 2015. This was obviously a strategic judgment of defense counsel to drill down on what he thought was the most promising legal issue without obscuring the argument with less persuasive and arguably groundless claims. Petitioner seeks exactly the type of second guessing of appellate counsel's strategy that is not proper under *Strickland*. Additionally, Petitioner fails to carry his burden of showing any prejudice from appellate counsel's performance. The prejudice here is the record itself, based on the facts showing Petitioner persisted in engaging in drug dealing despite multiple arrests, convictions, and periods of incarceration. Appellate counsel, exercising professional judgment, took his best shot in challenging the December 28, 2015 traffic stop, but the Fourth Circuit, like this Court, concluded it met constitutional standards. Petitioner has failed to carry his burden of showing ineffective assistance of counsel or prejudice regarding the representation of appellate counsel. (Ground One).

    C.    <u>Judicial Favoritism and Antagonism (Ground Three)</u>:

    Petitioner contends this Court was antagonistic to his suppression claims and showed favoritism toward the Government. (Dkt. No. 220 at 11-15). There is no merit to this claim. The Court approved defense counsel's request for a $6,500 authorization to retain an expert on

the dog sniff issue and to fly the expert to Charleston from California for the hearing. (Dkt. No. 79). The Court then conducted an evidentiary hearing over two days on the suppression issues to allow Petitioner a full and fair opportunity to put forward all evidence to support his claims. (Dkt. Nos. 138, 142). The Court thereafter carefully analyzed each of Petitioner's claims in a detailed 21-page order, ultimately concluding none of the claims had merit. (Dkt. No. 149). These rulings were subsequently affirmed by the Fourth Circuit on appeal. *United States v. Davis,* 760 Fed. Appx. 220 (2019). A judge's adverse ruling, after carefully reviewing the factual record and the law, does not constitute antagonism toward the defendant or favoritism toward the Government.

Petitioner also complains that in taking his guilty plea to Count Two, the Felon in Possession count, the Court did not establish the element that the firearm had traveled in interstate commerce. (Dkt. No. 220 at 15). Petitioner correctly noted that he stated at his plea colloquy that he did not know whether his firearm had traveled in interstate commerce. (Dkt. No. 180 at 23). The Court asked the Government what evidence it had to support a finding that the firearm had traveled in interstate commerce. The prosecutor stated he had not brought the full file with him and lacked immediate access to the evidence of the origin of the gun. (*Id*. at 23-24). The Court then briefly adjourned the hearing, and the prosecutor arranged for a witness from the Berkeley County Sheriff's Department to appear and testify that Petitioner's firearm was manufactured outside South Carolina and had traveled in interstate commerce. (*Id*. at 24-25). Petitioner's trial counsel then stated that she was satisfied the requirement of an interstate nexus was met. (*Id*. at 25).

The Court finds that Petitioner failed to establish judicial favoritism or antagonism in the handling of his case. (Ground Three).

D.  <u>Prosecutorial Misconduct (Ground Four)</u>:

Petitioner claims the Government prosecutor committed misconduct when he had the Grand Jury indict Petitioner on possession of methamphetamine on Count Four without first lab testing the methamphetamine for purity. (Dkt. No. 220 at 15-17). The Government noted that the methamphetamine seized in the first traffic stop (Count One) was lab tested and determined to be 97.9% pure, and methamphetamine seized from the residence was lab tested at 99.8% pure. A local lab confirmed the methamphetamine from the February traffic stop was only tested to confirm it was methamphetamine and the Government offered to have methamphetamine from the February 2016 traffic stop tested as well for purity, but the Petitioner elected to go forward with his guilty plea. (Dkt. No. 248-1 at 8-9). The Court finds that nothing about the manner in which the Government prosecutor handled Count Four of the Indictment remotely suggests any form of misconduct.

Petitioner further alleges that the prosecutor suborned perjury by allowing Officer Rollins to testify about the police dog's common responses during free air sniffs of vehicles. (Dkt. No. 220 at 17). The Court heard the testimony of Officer Rollins and there was no suggestion that his testimony was false or that the prosecutor suborned perjury.

Petitioner has failed to establish the presence of any prosecutorial misconduct. (Ground Four).

E.  <u>Effort to Relitigate Issues Related to the Search of December 28, 2015 (Grounds Five, Six, Seven and Eight)</u>:

Petitioner contends that there was not reasonable suspicion for Petitioner's December 28, 2015 traffic stop by Officer Rollins, the *Terry* search was improper, the police dog did not alert, and the second search was improper. These are the very issues raised on Petitioner's direct

11

appeal. It is well settled that where a defendant had a "full and fair" opportunity to litigate claims on direct appeal, those claims are barred from subsequent review in an ensuing habeas petition. *Stone v. Powell*, 428 U.S. 465, 494 (1976). Petitioner plainly had a full and fair opportunity to address these issues on direct appeal. Consequently, the issues raised by Petitioner in Grounds Five, Six, Seven, and Eight are not cognizable in his habeas petition. (Grounds Five, Six, Seven, and Eight).

      F.      Challenge to Petitioner's Armed Career Criminal Status (Ground Nine):

Petitioner seeks to argue that he was not properly designated an Armed Career Criminal. (Dkt. No. 220 at 25-27). This contention clearly could have been raised on direct appeal and Petitioner is therefore barred from litigating this claim under a habeas petition. Further, the record firmly establishes that Petitioner had three prior convictions for serious drug offenses, thereby satisfying the requirements for an Armed Career Criminal under 18 U.S.C. § 924(e). (Dkt. No. 169 at 10-12).

## Conclusion

Based on the foregoing, Petitioner's petition to vacate his sentence under 28 U.S.C. § 2255 is **DENIED** on all grounds.

## Certificate of Appealability

The governing law provides that:

> (c)(2)   A certificate of appealability may issue . . . only if the applicant made a substantial showing of the denial of a constitutional right.
>
> (c)(3)   The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by Paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any

dispositive procedural ruling by the district court is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee,* 252 F. 3d 675, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **DENIED**.

    **AND IT IS SO ORDERED**.

<u>s/ Richard Mark Gergel</u>
Richard Mark Gergel
United States District Judge

April 21, 2021
Charleston, South Carolina